Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1116 | **DATE** | 6/26/2002 |
| **CASE TITLE** | Thomas Hoskins vs. Northwestern Memorial Hospital | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion for summary judgment is granted. Trial date set for September 16, 2002 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUN 28 2002 | |
| | Notified counsel by telephone. | date docketed | 23 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | |
| EF | courtroom deputy's initials | 02 JUN 27 PM 5:11 date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS HOSKINS, )
)
Plaintiff, )
)
v. ) Case No. 01 C 1116
) HONORABLE CHARLES R. NORGLE
NORTHWESTERN MEMORIAL )
HOSPITAL )
Defendant. )

**ORDER AND OPINION**

CHARLES R. NORGLE, District Judge:

Before the court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(b) and (c). For the following the reasons, the motion is granted.

**I. BACKGROUND**[1]

This case involves a claimed violation of 42 U.S.C. 2000e-2(a)(1), et seq. ("Title VII"), as well as a claimed violation of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101. Plaintiff, Thomas Hoskins ("Hoskins"), was hired by Defendant, Northwestern Memorial Hospital ("NMH"), as a residential property manager. NMH, beside the obvious business endeavor of running a hospital, also owns several rental properties. Hoskins was hired on August 18, 1997 by the Director of Real Estate Services, Marilyn Kangas ("Kangas"). Hoskins' primary duties were to supervise the daily operations of two apartment buildings and Kangas was Hoskins' direct supervisor.

---

[1] The court takes the facts from the parties Local Rule 56.1 statements and accompanying briefs. Disputed facts are noted in the text.

In March of 1998, Hoskins began experiencing an inability to stay awake during staff meetings. The parties dispute whether Hoskins sought medical help of his own accord, but agree Hoskins saw Dr. Zoran Grujic ("Dr. Grujic") for treatment. After examining Hoskins and administering a series of tests, Dr. Grujic diagnosed Hoskins with narcolepsy and prescribed Ritalin. After Dr. Grujic's examination and diagnosis, Hoskins informed Kangas orally that he had narcolepsy.

It is at this point that both parties dispute what occurred. Hoskins states that he requested a reasonable accommodation concerning his narcolepsy to Kangas in March of 1998. Hoskins' requested accommodation sought short breaks during the day and longer lunch breaks to allow him to rest. Hoskins alleges that Kangas ignored his requests. Then on January 5, 1999, Hoskins made another request for accommodation. On that date Hoskins, who had been called to work the previous night at 11:00 PM because of a fire at the one of the properties he managed, requested that he be allowed to take the afternoon off. Kangas allegedly denied Hoskins' request.

In contrast, NMH offers the following version of events. Several managers reported to Kangas that Hoskins was having trouble staying awake in staff meetings. Kangas never personally observed Hoskins fall asleep in staff meetings, but based on the reports of other managers, Kangas suggested to Hoskins he seek medical advice. After Hoskins was diagnosed with narcolepsy, he informed Kangas. NMH submits this effectively ended the issue, as it claims; "Thereafter, Kangas never observed Hoskins fall asleep at work, never warned him that sleeping on the job was a violation of work rules, never disciplined him for sleeping at work and never prevented him from taking breaks or extending his lunch period to rest because of narcolepsy." (Def.'s Mot. for Summ. J., pg. 2.) NMH further claims that Hoskins did not provide medical evidence of treatment that

2

entailed a reduction of work duties or hours. Rather, Hoskins continued to perform his job another 22 months after his diagnosis of narcolepsy. Kangas terminated Hoskins based on his performance, "including deficiencies in leadership and team building skills, problem solving matters, decision-making, handling of capital expenditures, timely completing required employee performance evaluation, management of his staff employees, budget and handling money under his supervision that went missing on two separate occasions." (Def.'s Mot. For Summ. J., pg. 2.)

Both parties acknowledge that Hoskins was terminated on January 28, 2000. The sole decision-maker involved in Hoskins' termination was Kangas. NMH now moves for summary judgment, arguing that there are no disputed issues of fact, and that it is entitled to judgment as a matter of law.

## II. DISCUSSION

### A. Standards for Summary Judgment

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High School District No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999); see also Shank v. William R. Hague, Inc., 192 F.3d 675, 682 (7th Cir. 1999) (stating that a party opposing summary judgment must present "what evidence it has that would convince a trier of fact to accept its version of events"). A defendant is entitled to put the plaintiff to his proofs and demand a showing of the evidence. See e.g. Navarro v. Fuji Heavy Industries. Ltd., 117 F.3d 1027, 1030 (7th Cir. 1997). If the plaintiff fails

to come up with the required proof, the defendant is entitled to summary judgment. See id. It bears repeating that the plaintiff must present evidence, rather than speculation and conclusions without factual support. See Rand v. CF Industries, Inc., 42 F.3d 1139, 1146-47 (7th Cir. 1994).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment. See Fed. R. Civ. P. 56(c); Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir.1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); First Nat'l. Bank of Arizona v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. Amercian Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994) (citing Anderson, 477 U.S. at 249-50; 10 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure: Civil § 2712, at 574-78 (2d ed. 1983)). Not all factual disputes warrant the denial of summary judgment; only disputes as to facts material to the substantive claim require resolution by trial. Smith v. City of Chicago, 242 F.3d 737, 744 (7th Cir. 2001) (citing Anderson, 477 U.S. at 247-248).

## B. Reverse Discrimination Claim

Hoskins presents a reverse discrimination claim, as he claims to have been terminated because of his sex. Title VII provides in pertinent part that it is unlawful to "discharge any individual . . . because of such individuals . . . sex . . . ." 42 U.S.C. § 2000e-2(a). Hoskins can prove his reverse discrimination case with either direct evidence of discrimination or indirectly through the burden shifting analysis of McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973).

Direct evidence of discrimination is "smoking gun" evidence, such as "we fired you because of your [sex]." Robin v. ESPO Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir. 2000). Because such evidence is rare, a plaintiff can also proceed using indirect evidence of discrimination and the McDonnell-Douglas burden shifting approach. Robin, 200 F.3d at 1088. Hoskins presents no direct evidence, so the court proceeds to the McDonnell-Douglas method.

Under the burden shifting method, a plaintiff raises a presumption of discrimination by proving his prima facie case by a preponderance of the evidence. See id. The burden then shifts to the employer to articulate a legitimate non-discriminatory reason for its action. Id. If the employer does so, the presumption of discrimination disappears, and the plaintiff must prove by a preponderance of the evidence that the employer's stated reasons are a pretext for intentional discrimination. Id. Pretext means a lie. Specifically, the plaintiff must demonstrate that the employer's stated reason is phony or completely lacking a factual basis. Paluck v. Gooding Rubber Co., 221 F.3d 1003, 1012-13 (7th Cir. 2000); Jordan v. Summers, 205 F.3d 337, 343 (7th Cir. 2000). As the Seventh Circuit pointed out in Robin, the burden shifting framework is not a rigid analysis, rather it is a tool for the court to determine the need for a trial. Robin, 200 F.3d at 1088-89. If a plaintiff does not have direct or indirect evidence that is conclusive in itself, the plaintiff may be able

to defeat summary judgment by composing a convincing mosaic of direct and indirect evidence of discrimination. Id. However, before the court can use the burden-shifting analysis of McDonnell-Douglas the plaintiff must establish a prima facie case of discrimination. See Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-253 (1981). A prima facie case "must be established and not merely incanted." Coco v. Elmwood Core, Inc., 128 F.3d 1177, 1178 (7th Cir. 1997).

Reverse discrimination claims require a different prima facie case to be established than that involved in "regular" discrimination. Typically, in order to establish a prima facie case of discrimination under Title VII, whether it be race, sex, or nationality based, a plaintiff must demonstrate: (1) he or she is a member of protected class; (2) he or she was meeting his or her employer's legitimate job expectations; (3) he or she suffered an adverse employment action; and (4) the employer treated similarly situated employees outside plaintiff's class more favorably. See Mills v. Health Care Service Corporation, 171 F.3d 450, 454 (7th Cir. 1999); Russell v. Board of Trustees of Univ. of Illinois, 243 F.3d 336, 341 (7th Cir. 2001). This initially would seem to indicate that the first prong does not allow reverse discrimination cases. However, it is well settled law that the protections of Title VII are not limited to members of historically discriminated-against groups. Mills, 171 F.3d at 454 (citing McDonald v. Santa Fe Trail Transpo. Co., 427 U.S. 273, 280 (1976); Greenslade v. Chicago Sun-Times, Inc., 112 F.3d 853, 863 (7th Cir. 1997); Hill v. Burrell Communications Grp., Inc., 67 F.3d 665, 667 (7th Cir. 1995)). The Seventh Circuit has taken this to heart and in cases of reverse discrimination altered the prima facie case of employment discrimination. See Mills, 171 F.3d at 454-455. The alteration modifies the first prong to include what are called background circumstances. See id. at 457. Background circumstances provide the

context in which the employment decisions in questions were made. In other words, any circumstances that would support an inference that the defendant is one of the unusual employers who discriminate against the majority. See id. at 455. Thus, in order to establish a prima facie case of reverse discrimination, a plaintiff must demonstrate as the first element evidence that supports an inference that the defendant discriminated against the majority. See id. at 454-455. Both parties ignore the prima facie standard developed in Mills, but the court cannot.[2] The court will address Hoskins' reverse discrimination claim under the standard adopted in Mills.

Hoskins has not presented any evidence that would support an inference that NMH discriminated against the majority. See Mills, 171 F.3d at 455. Some examples of evidence which would support an inference are "... schemes to fix performance ratings to [a plaintiff's] detriment, that the hiring system seemed rigged against [plaintiff] because it departed from the usual procedures in an "unprecedented fashion," or that [plaintiff was] passed over despite superior qualifications." Mills, 171 F.3d at 455 (citing Harding v. Gray, 9 F.3d 150, 152-53 (D.C. Cir. 1993)). Other possible examples of evidence supporting an inference could be "the person ultimately hired was clearly less qualified than the plaintiff, the hiring authority expressed intense interest in hiring a woman, and there was a pattern of hiring women in the past." Mills, 171 F.3d at 455 (citing Duffy v. Wolle, 123 F.3d 1026, 1036-37 (8th Cir. 1997)). Hoskins offers only conclusory and self-serving statements

---

[2] Instead of addressing the prima facie standard developed in Mills, Hoskins argues that "it is a little too late for the employer to invoke unsatisfactory performance as a basis for termination." (Pl.'s Response to Def.'s Mot. for Summ. J., pg. 7.) Rather, Hoskins contends that his performance was satisfactory and did not approach a "level worthy of termination." (Pl.'s Response to Def.'s Mot. for Summ. J., pg. 7.) Hoskins concludes that his termination was totally unexpected. Similarly, NMH does not address the standard established in Mills, rather NMH argues that Hoskins' performance was not up to standard and that he was placed on notice that his performance was substandard.

7

made in his deposition and affidavit and these are not enough. A prima facie case must be proved by a preponderance of the evidence. See Robin, 200 F.3d at 1088. A plaintiff must present evidence, rather than speculation and conclusions without factual support. See Rand, 42 F.3d at 1146-47. Absent such evidence, there is no factual dispute requiring a trial.

Second, Hoskins has not introduced evidence to establish the second prong of the prima facie case, that he was meeting NMH's legitimate expectations. Hoskins states that he was meeting NMH's legitimate job expectations, which he supports with alleged opinions by his staff and peers (that are uncredited) stating that Hoskins was performing up to standard. See Gustovich v. AT & T Communications, Inc., 972 F.2d 845, 848 (7th Cir. 1992) (employee's self-serving statements about his ability are insufficient to contradict an employer's negative assessment of that ability); Dey v. Colt. Const. & Development Co., 28 F.3d 1446, 1460 (7th Cir. 1994) (little weight is given to statements by coworkers that generally corroborate a plaintiff's own perception of satisfactory job performance). Again, Hoskins inappropriately relies on his own conclusory and self-serving statements. See Robin, 200 F.3d at 1088.

In contrast, NMH offers as evidence of Hoskins' poor performance Kangas' uncontradicted testimony, Hoskins' performance reviews, an action plan developed for Hoskins, and Hoskins' own testimony. Kangas testified that she notified Hoskins of his substandard performance as part of the evaluation process at NMH. (See Def.'s Mot for Summ. J., Ex. 4, pg. 67; Def.'s Mot for Summ. J., Ex. 6.) Kangas met with Hoskins as part of the evaluation process and spoke with him about his evaluation and areas that he needed to improve upon. (See Def.'s Mot. for Summ. J., Ex. 3, pp. 42-53; Def.'s Mot. for Summ. J., Ex. 6.) Further, Kangas developed an action plan for Hoskins in order for him to improve his performance. (See Def.'s Mot. for Summ. J., Ex. 3, pp. 42-53; Def's Mot.

for Summ. J., Ex. 6.) The action plan specifically addressed areas in which Hoskins was deficient. (See Def.'s Mot. for Summ. J., Ex. 6.) Finally, Hoskins admits in his deposition that he was notified by Kangas of his poor performance. (See Def.'s Mot. For Summ. J., Ex. 3, pp. 42-53.) Hoskins offers nothing to contradict this evidence and cannot establish the second prong of the prima facie case. See Robin, 200 F.3d at 1088; see also Rand, 42 F.3d at 1146-47.

The fourth prong of the prima facie case involves more favorable treatment for similar situated female employees. Hoskins argues that "[n]one of the female employees at NMH were terminated for any of the same reasons that allegedly caused Hoskins to be terminated." (Pl.'s Response to Mot. for Summ. J., pg. 8.) Hoskins provides nothing else. As NMH correctly points out, Hoskins "must show that he is similarly situated with respect to performance, qualifications, and conduct" and that he and the other employees "had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employers treatment of them." Radue v. Kimberly-Clarke Corp., 219 F.3d 612, 617-18 (7th Cir. 2000). Hoskins fails miserably. See Robin, 200 F.3d at 1088; see also Rand, 42 F.3d at 1146-47.

Even though Hoskins is unable to satisfy three of the prongs of prima facie case of reverse discrimination, with an abundance of caution, the court will assume that Hoskins has established a prima facie case and address his claims under the indirect burden-shifting analysis. As explained previously, once the prima facie case is established the burden then shifts to the defendant to offer a reason for the termination. See Robin, 200 F.3d at 1088. NMH has stated the reason for Hoskins' termination was substandard performance. As discussed previously, NMH offers as evidence of Hoskins' poor performance Kangas' uncontradicted testimony, Hoskins' performance reviews, an action plan developed for Hoskins, and Hoskins' own testimony. (See infra pg. 8.) Hoskins fails

9

to rebut any of this evidence. Once a reason is provided by the defendant, the burden shifts back to the plaintiff to demonstrate that the defendant's reason was a pretext or a lie. See Robin, 200 F.3d at 1088. Once again, Hoskins offers nothing more than conclusory statements to counter NMH's reason for termination. This is not enough. See Robin, 200 F.3d at 1088; see also Rand, 42 F.3d at 1146-47.

Hoskins has failed to establish a prima facie case. Hoskins has not presented any evidence that would support an inference of discrimination against the majority, that he met NMH's legitimate job expectations, or that NMH treated similarly situated employees outside Hoskins' class more favorably. Further, even if the prima facie case is assumed, Hoskins does not present any evidence which demonstrates that NMH's reason for terminating him, substandard performance, is a pretext. Hoskins claim of reverse discrimination fails. The court now turns to Hoskins' ADA claim.

**C. Hoskins' ADA Claim:**

The ADA prohibits discrimination against "a qualified individual with a disability because of the disability. . . ." 42 U.S.C. § 12112(a). To that end, the ADA recognizes disparate treatment discrimination. See generally Bultemeyer v. Fort Wayne Community Schools, 100 F.3d 1281, 1283 (7th Cir. 1996) (citing De Luca v. Winer Indus., 53 F.3d 793, 797 (7th Cir. 1995)). The prima facie case for ADA disparate treatment is: (1) the plaintiff is disabled within the meaning of the ADA; (2) the plaintiff's work performance meets the employer's legitimate expectations; (3) the plaintiff suffered an adverse employment action; and (4) the circumstances indicate that it is more likely than not that the plaintiff's disability was the reason for the adverse employment action. Spath v. Hayes Wheels Int'l-Indiana, Inc., 211 F.3d 392, 396 (7th Cir. 2000). The ADA also recognizes "failure to accommodate" disability discrimination. In order to show a prima facie case of failure to

10

accommodate, as NMH correctly points out, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant was aware of his disability; (3) he was otherwise qualified for his job; and (4) the disability caused the adverse employment action. Foster v. Arthur Andersen, LLP, 168 F.3d 1029, 1032-33 (7th Cir. 1999). A prima facie case for either disparate treatment or failure to accommodate requires that the plaintiff is disabled within the meaning of the ADA.

A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Nawrot v. CPC International, 277 F.3d 896, 903 (7th Cir. 2002) (citing 42 U.S.C. § 12111(8)). Under the ADA, a disability is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major live activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). But not all plaintiffs with health conditions have a "disability" within the meaning of the ADA. Nawrot, 277 F.3d at 903 (referring to Christian v. St. Anthony Med. Ctr., Inc., 117 F.3d 1051, 1053 (7th Cir. 1997). To claim the protection of the ADA, plaintiffs must come within the coverage of the statutory definition of disability. Nawrot, 277 F.3d at 903 (referring to Moore v. J.B. Hunt Transport, Inc., 221 F.3d 944, 950 (7th Cir. 2000).

In assessing whether a particular condition constitutes a disability for purposes of subsection (A) of 42 U.S.C. § 12102(2), the Supreme Court has established a three-step inquiry. Moore, 221 F.3d at 950-51 (quoting Bragdon v. Abbott, 524 U.S. 624, 631 (1998)).

> First, we consider whether [the individual's claimed disability] was a physical impairment. Second, we identify the life activity upon which [the individual] relies . . . and determine whether it constitutes a major life activity under the ADA. Third, tying the two statutory

phrases together, we ask whether the impairment substantially limited the major life activity.

Bragdon, 524 U.S. at 631. To determine whether an individual is substantially limited in a major life activity, the court examines whether that individual, when compared to the general population, is unable to perform or is significantly restricted as to the condition, manner, or duration under which she can perform that major life activity. Equal Employment Opportunity Commission, v. Sears, Roebuck & Co., 233 F.3d 432, 438 (7th Cir. 2000) (citing Duda v. Board of Educ. of Franklin Park Pub. Sch. Dist. No. 84, 133 F.3d 1054, 1058 n. 5 (7th Cir. 1998)). Individuals whose impairment might, could, or would be substantially limited if mitigating measures were not taken, but is corrected by medication or other measures cannot be considered disabled under the statues. Narwot, 277 F.3d at 904 (quoting Sutton v. United Air Lines, Inc., 527 U.S. 471, 482-83 (1999) (internal quotation marks omitted)). "When addressing the major life activity of performing manual tasks, the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most peoples daily lives, not whether the claimant is unable to perform the tasks associated with [his] specific job." Toyota Motor Mfg., Kentucky v. Williams, 534 U.S. 184, 122 S.Ct. 681, 693 (2002).

Hoskins claims that his narcolepsy falls under the ADA as a disability and affects his major life activity of working. Specifically, Hoskins submits that "the average person does not typically fall asleep at staff meetings, even after taking his regular dosage of Ritalin." (Pl.'s Response to Def.'s Mot. for Summ. J., pg. 12.) In opposition, NMH argues that Hoskins is not disabled within the meaning of the ADA. More specifically, Hoskins admitted that despite his narcolepsy he could perform all essential functions of his job. The court finds the argument of Hoskins unpersuasive.

There is no evidence that Hoskins could not perform all the essential functions of his job. Hoskins does not submit any medical evidence, such as restrictions or suggested accommodation placed upon his work day by any physician, that he could not perform the essential functions of his job. Although, Hoskins did request generally the ability to take longer lunch periods and breaks throughout his day, Hoskins admits that he never made any specific requests to Kangas, or anyone at NMH for that matter, for longer lunch periods or breaks for any particular day. (See Pl.'s Response to Def.'s Local Rule 56.1 Statement of Facts, ¶ 94; Def.'s Local Rule 56.1 Statement of Facts, ¶ 94.) More importantly, Hoskins admits in deposition testimony, that his narcolepsy did not prevent him from performing the essential duties of his position. (See Def.'s Mot. for Summ. J., Ex. 3, pp. 9-10.)[3] In order for the major life activity of working to be substantially limited, Hoskins must demonstrate that he was substantially limited in his ability to perform a board range of jobs, not just a specific aspect of his job. See Krocka v. City of Chicago, 203 F.3d 507, 513-514 (7th Cir. 2000). Hoskins' contention that he fell asleep at a few staff meetings is not enough. Hoskins is not disabled under the statutory definition of the ADA, and both his disparate treatment and failure to accommodate claims fail.

---

[3] A conflict exists between the deposition testimony of Plaintiff and Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Facts. Plaintiff testified in his deposition that his narcolepsy did not prevent him from performing the essential job duties. (Def.'s Mot. for Summ. J., Ex. 3., pp. 9-10.) Whereas, Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Facts states that his narcolepsy did prevent him from performing the essential job duties as a property manager by not letting him actively participate in all staff meetings. When a conflict arises between a plaintiff's own deposition testimony and an affidavit, the deposition testimony overrides the conflicting affidavit. "Parties cannot thwart the purpose of Rule 56 by creating issues of fact through affidavits that contradict their own depositions." Miller v. A.H. Robbius Co., Inc., 766 F.2d 1102, 1104 (7th Cir. 1985).

## III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted.

IT IS SO ORDERED

ENTER:

_____
CHARLES RONALD NORGLE, Judge

United States District Court

DATED: 6/26/02